| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 1:21-CR-34 |
| | § | |
| CHARLES ROBERT KNATT | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Charles Robert Knatt's ("Knatt") Motion to Withdraw Pleas (#38). The Government filed a response in opposition (#42). Having considered the pending motion, the Government's response, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

On April 7, 2021, a grand jury in the Eastern District of Texas returned a two-count Indictment charging Knatt in Count One with Carjacking, in violation of 18 U.S.C. § 2219, and in Count Two with Discharging a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1). At his initial appearance, the court appointed a Federal Public Defender to serve as Knatt's counsel. On May 6, 2021, Knatt was arraigned before the Honorable Keith Giblin and entered a plea of not guilty.

On June 10, 2021, Knatt filed a Notice of Plea Agreement. Subsequently, on June 14, 2021, the Federal Public Defender appointed to Knatt's case filed a Motion to Withdraw, citing Knatt's dissatisfaction with the attorney's efforts, strategies, and representation. Two days later, on June 16, 2021, Knatt filed a *pro se* Motion for Ineffective Assistance of Counsel. On June 28, 2021, the court granted Knatt's motion and appointed criminal defense attorney Ryan Matuska to represent him. The noticed plea hearing did not proceed.

On August 11, 2021, Knatt appeared before the court for a change of plea hearing. Knatt entered guilty pleas to both Counts One and Two of the Indictment for an agreed sentence of 240 months' imprisonment. In accordance with the plea agreement, Knatt stipulated to the facts of both Counts One and Two of the Indictment. The stipulated facts include that on March 15, 2021, Knatt approached the victim ("JP") at around 4:30 in the morning. JP was exiting his house to head to work when Knatt appeared brandishing a handgun. He pointed the gun at JP demanding money and then proceeded to search through his pockets. Knatt took JP's phone, backpack, wallet, and keys and handed them to another male who entered the driver's seat of JP's truck. As the truck was backing out of the driveway, JP ran to the front door of his residence yelling for his wife to open the locked door. As JP attempted to get inside, Knatt stepped out of the passenger side of the truck and fired a number of shots at JP. One of these shots struck JP in the arm, causing extensive bleeding and resulting in serious bodily injury. After discharging the firearm, Knatt got back into the truck and fled the scene. The encounter was recorded on home surveillance video.

Knatt turned himself in three days later after seeing news reports about the carjacking and shooting. Knatt has prior convictions for Evading Arrest with a Vehicle, Trespass, and Interfering with Public Servant. He has pending state charges of Aggravated Robbery and Unauthorized Use of a Vehicle stemming from the incident.

During the plea colloquy, the court repeatedly advised Knatt of his rights, confirmed that he was satisfied with his attorney's representation, verified that he agreed to the terms of the plea agreement, and ascertained that his plea was voluntary. Knatt answered affirmatively to every

question, asserting that he understood his rights and the consequences of the plea. The court then accepted Knatt's guilty plea.

II, <u>Motion to Withdraw Guilty Plea</u>

On April 29, 2022, Knatt filed a motion to withdraw his guilty plea. The motion was filed almost two months after Knatt received the Presentence Investigation Report ("PSR") on March 3, 2022. The sentencing guidelines range set forth in the PSR is 51-63 months as to Count One and 120 months as to Count Two to be served consecutively to Count One. Knatt's 240-month plea agreement, while above the sentencing guidelines, is well below the statutory maximum sentence of 25 years as to Count One and life as to Count Two. Still, Knatt contends that he did not understand the consequences of his binding plea agreement, *i.e.*, that it could result in a term of imprisonment greater than that called for by the sentencing guidelines. He argues that his age of nineteen and limited educational background, in conjunction with the inadequate assistance of counsel, prevented him from entering his guilty plea knowingly and voluntarily.

A defendant has no absolute right to withdraw a guilty plea before the imposition of sentence. *United States v. Landreneau*, 967 F.3d 443, 449 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1443 (2021); *United States v. Lord*, 915 F.3d 1009, 1013 (5th Cir.), *cert. denied*, 140 S. Ct. 320 (2019); *United States v. Harrison*, 777 F.3d 227, 234 (5th Cir. 2015); *United States v. Minor*, 714 F.3d 319, 321 (5th Cir. 2013); *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003). "Instead, the district court may, in its discretion, permit withdrawal before sentencing if the defendant can show a 'fair and just reason.'" *Landreneau*, 967 F.3d at 449 (quoting *Powell*, 354 F.3d at 370); *see Harrison*, 777 F.3d at 234 (noting that "a defendant may withdraw a guilty plea after the court has accepted it, but prior to sentencing, only if he 'can show a fair and just reason

for requesting the withdrawal.'" (quoting FED. R. CRIM. P. 11(d)(2)(B))); *United States v. London*, 568 F.3d 553, 562 (5th Cir. 2009), *cert. denied*, 562 U.S. 1078 (2010).

To determine whether a defendant has demonstrated a fair and just reason for withdrawing his plea, the court must consider the following factors: (1) whether the defendant has asserted his innocence; (2) whether the Government would suffer prejudice if the withdrawal motion were granted; (3) whether the defendant has delayed in filing his withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources. *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984), *cert. denied*, 471 U.S. 1004 (1985); *see United States v. Strother*, 977 F.3d 438, 443 (5th Cir. 2020); *Landreneau*, 967 F.3d at 449; *Lord*, 915 F.3d at 1014; *Harrison*, 777 F.3d at 234; *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014). "The district court is not required to make findings as to each of the *Carr* factors." *Powell*, 354 F.3d at 370 (citing *United States v. Brewster*, 137 F.3d 853, 858 (5th Cir.), *cert. denied*, 525 U.S. 908 (1998)); *see Landreneau*, 967 F.3d at 449; *United States v. Gonzalez-Archuleta*, 507 F. App'x 441, 442 (5th Cir. 2013). "[T]he district court should make its determination based on the totality of the circumstances." *Lord*, 915 F.3d at 1014 (quoting *United States v. Still*, 102 F.3d 118, 124 (5th Cir. 1996), *cert. denied*, 522 U.S. 806 (1997)); *see Strother*, 977 F.3d at 443; *Landreneau*, 967 F.3d at 449; *Urias-Marrufo*, 744 F.3d at 364; *Brewster*, 137 F.3d at 858. "The defendant bears the burden of establishing a fair and just reason for withdrawing his plea." *Powell*, 354 F.3d at 370; *accord Strother*, 977 F.3d at 443; *United States v. Lizarraras-Chacon*, 804 F. App'x 292, 293 (5th Cir. 2020); *London*, 568 F.3d at 563; *Brewster*, 137 F.3d at 858. After reviewing the

record and considering the arguments of the parties, the court finds that the *Carr* factors do not weigh in Knatt's favor, that a hearing is unnecessary, and that the withdrawal of Knatt's guilty plea is unwarranted.

###### A. *Carr* Factor One—Assertion of Innocence

In this instance, Knatt makes no assertion of actual innocence in his motion. During the plea colloquy, Knatt repeatedly acknowledged his guilt and, when asked what he did wrong, specifically explained to the court that he had "shot someone" and "took his car." In addition, Knatt signed a factual basis and, under oath, attested to the facts contained therein, including that on March 15, 2021, at around 4:30 a.m., Knatt approached JP as he was leaving his house. Knatt then pointed a gun at JP demanding his money and keys. After Knatt took JP's valuables, he got into JP's truck as it was backing out of the driveway. At that point, JP ran to his door frantically trying to alert his wife to unlock it. Then, Knatt got out of the truck and fired several rounds from the firearm, striking JP in the arm and causing serious bodily injury.

In fact, he declared in open court that the factual basis was correct and that he would not change any part of it. "Solemn declarations in open court carry a strong presumption of verity." *Strother*, 977 F.3d at 444; *see United States v. Diaz*, 516 F. App'x 358, 361-62 (5th Cir. 2013); *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009). As there is no suggestion, claim, or assertion by Knatt of his innocence, this factor provides no support for Knatt's motion to withdraw his guilty plea.

###### B. *Carr* Factors Two, Four, and Seven—Prejudice to the Government, Inconvenience to the Court, and Waste of Judicial Resources

The second *Carr* factor considers whether the Government would be prejudiced if Knatt's motion were granted. This factor is closely intertwined with factor four—whether the court would

5

be substantially inconvenienced—and factor seven—whether the withdrawal would waste judicial resources. Therefore, these factors will be analyzed together. *See United States v. Rodriguez*, No. 3:08-CR-267-D, 2010 WL 286730, at *4 (N.D. Tex. Jan. 22, 2010), *aff'd*, 411 F. App'x 713 (5th Cir. 2011).

The Government asserts that it would be prejudiced if Knatt is permitted to withdraw his guilty plea. Specifically, the Government avers that it would expend significant time and resources to prepare for trial at this juncture, pointing out that the incident occurred over thirteen months ago and the guilty plea more than eight months ago. The Government would be required to renew its investigation, locate witnesses, examine medical records, marshal other evidence, and deal with a victim who was assured long ago that the case had been resolved. The Government further maintains that allowing Knatt to withdraw his plea would inconvenience the court, present scheduling problems, impact other cases and defendants, and be a clear waste of judicial resources, an assessment with which the court concurs. Knatt, despite having the burden to show the court that a withdrawal is justified, did not address any of these issues in his motion. *See United States v. Washington*, 480 F.3d 309, 316 (5th Cir. 2007) (noting in its denial of withdrawal motion that defendant failed to cite any *Carr* factors in his filing), *cert. denied*, 559 U.S. 1114 (2010). Therefore, considering that the Government and the court would be inconvenienced by a withdrawal of Knatt's guilty plea and that allowing withdrawal would be a waste of judicial resources, *Carr* factors two, four, and seven weigh in favor of denial.

C. *Carr* Factor Three—Timeliness of Withdrawal Motion

The third *Carr* factor, *i.e.*, whether Knatt delayed in filing his motion to withdraw, weighs against granting his motion. Knatt has been dilatory in raising the issue of withdrawing his guilty

plea. Knatt pleaded guilty on August 11, 2021, but he did not file the instant motion until April 29, 2022, over eight months after his plea hearing. *See Carr*, 740 F.2d at 345 (characterizing withdrawal motion as untimely when it was filed twenty-two days after defendant's guilty plea); *see also Strother*, 977 F.3d at 444 ("[T]hree months between the entering of a guilty plea and the filing of a motion to withdraw constitutes a significant delay that weighs against granting withdrawal."); *United States v. Dunfee*, 821 F.3d 120, 131 (1st Cir. 2016) (finding that a two-month delay in filing motion to withdraw after pleading guilty weighs against permitting withdrawal); *United States v. Walton*, 537 F. App'x 430, 435 (5th Cir.), *cert. denied*, 571 U.S. 1083 (2013) (affirming court's denial of defendant's motion to withdraw guilty plea where the motion was filed five months after the plea was entered); *United States v. Saucedo-Castanon*, 511 F. App'x 308, 311 (5th Cir. 2013) (affirming district court's denial of defendant's motion to withdraw his guilty plea where he filed the withdrawal motion "nearly three months after pleading guilty—a considerable delay"); *United States v. Shanklin*, 193 F. App'x 384, 386 (5th Cir. 2006), *cert. denied*, 549 U.S. 1143 (2007) (affirming denial of motion to withdraw guilty plea where defendant admitted under oath that he was guilty and that his plea was knowing and voluntary and did not move until the day of the sentencing hearing—four months after the plea—to request withdrawal); *United States v. Graham*, 466 F.3d 1234, 1238 (10th Cir. 2006) (finding that defendant was not entitled to withdraw his guilty plea when, among the other *Carr* factors, defendant filed his motion to withdraw about two months after plea). The court finds that Knatt has unjustifiably delayed—without substantial explanation—seeking to withdraw his plea, which was entered approximately eight months prior to his filing a motion to withdraw it. As *Carr* recognizes, "[w]ithdrawal is permitted for pleas unknowingly made; 'the purpose is not to allow

a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *United States v. Washington*, 480 F.3d at 317 (quoting *Carr*, 740 F.2d at 345); *United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990) ("A mere change of mind is insufficient to permit the withdrawal of a guilty plea before sentencing."). In this instance, Knatt made a tactical decision to change counsel, to enter a guilty plea, to wait a number of months, and then to seek to withdraw his plea upon belatedly concluding that he made a bad choice by pleading guilty.

   D. *Carr* Factor Five—Close Assistance of Counsel

Knatt suggests that his motion for withdrawal is in part based on his counsel's ostensibly providing him with insufficient information before he signed his Rule 11(c)(1)(C) plea agreement. He argues that "he does not feel counsel adequately assisted him in understanding the possible consequence of entering his pleas to Count I and II of the Indictment knowingly and voluntarily." Throughout the Plea Hearing held on August 11, 2021, during which Knatt had the opportunity to change his plea, he repeatedly told the court that he had discussed the charges against him with his attorney and that he did not need any further explanation by the court or his attorney. He also confirmed that he understood the plea agreement on the date he signed it and at the time of the hearing, acknowledging that the court would not be able to determine the advisory guideline sentence of his case until after the PSR was completed at a later date. The Government summarized the plea agreement in some detail, emphasizing that "the agreement between the parties is a sentence of 120 months imprisonment as to Count One, and a sentence of 120 months of imprisonment consecutive to all other counts as to Count Two." Knatt stated that he understood the summary, that he agreed with the Government's summarization, and that he still accepted the

terms of the plea agreement. At the end of the hearing, before accepting the plea, the court asked "Do you have any questions you would like to ask about the charges, your rights, the sentencing possibilities, or anything else regarding this matter?" Knatt replied, "No ma'am." Based on the record, there is no basis for Knatt's assertion that his plea was made without proper explanation or was in anyway involuntary. "Determining whether close assistance of counsel was available under *Carr* 'requires a fact-intensive inquiry.'" *Strother*, 977 F.3d at 445 (quoting *McKnight*, 570 F.3d at 646); *see Urias-Marrufo*, 744 F.3d at 365. In this instance, Knatt had the assistance of both the Federal Public Defender and appointed counsel. Moreover, the question of whether Knatt received effective assistance of counsel is distinct from whether he received close assistance of counsel under [*Carr*]." *Strother*, 977 F.3d at 445; *United States v. Marquez*, 707 F. App'x 804, 806 (5th Cir. 2017).

Although the Fifth Circuit has not clearly delineated what facts the court should consider when determining whether a defendant received close assistance of counsel, in *McKnight*, the court reviewed Fifth Circuit precedent and indicated that the following facts support a finding that a defendant received close assistance: (1) counsel's negotiating a favorable plea agreement; (2) counsel's questioning the defendant about possible affirmative defenses; (3) counsel's filing several substantive motions; (4) counsel's filing several motions for continuance; (5) counsel's adherence to the rules of professional responsibility regarding conflicts of interest; (6) counsel's engaging in discussions with the defendant regarding his desire to withdraw his guilty plea; (7) counsel's acting in accordance with the defendant's instructions; (8) defendant's statement regarding his satisfaction with his counsel's advice; (9) the court's personal knowledge of defense counsel's integrity. 570 F.3d at 646-47; *see Lord*, 915 F.3d at 1015-16; *United States v. Morris*,

9

85 F. App'x 373, 374 (5th Cir. 2003); *United States v. Hurtado*, 846 F.2d 995, 997 (5th Cir.), *cert. denied*, 488 U.S. 863 (1988); *United States v. Benavides*, 793 F.2d 612 (5th Cir.), *cert. denied*, 479 U.S. 868 (1986); *Carr*, 740 F.2d at 343. The inquiry, however, is distinguished from whether counsel gave correct advice or was able to establish a viable defense. *See Lord*, 915 F.3d at 1016; *Urias-Marrufo*, 744 F.3d at 365. When, as here, the defendant has been represented by multiple attorneys the court may consider the conduct of all of the attorneys who have represented the defendant to determine whether he received close assistance of counsel. *See McKnight*, 570 F.3d at 647 (discussing *Benavides*, 793 F.2d at 613-14). The ultimate inquiry is "whether counsel provided close assistance by evaluating various factors known to the Court as to the work of defense counsel." *United States v. Portillo*, 3:15-CR-351-M, 2018 WL 1729263, at *3 (N.D. Tex. Apr. 9, 2018) (citing *McKnight*, 570 F.3d at 646-48).

Throughout this case, Knatt has been represented by either a court-appointed attorney from the CJA panel or a Federal Public Defender. His appointed counsel, Ryan Matuska, is an experienced criminal defense attorney. During his plea hearing on August 11, 2021, Knatt affirmatively stated that he had discussed the ramifications of the plea agreement with counsel and was satisfied by his counsel's representations and advice in this case. Further, Knatt faced a maximum sentence of 300 months as to Count One and a consecutive life sentence as to Count Two. Hence, his statutory maximum sentence was far longer than his agreed sentence of 240 months. In light of the nature and circumstances of the offense, the amount of prison time Knatt potentially faced if convicted, and the likelihood that the court would vary upward from the sentencing guidelines in view of the egregious facts of the case, the court concludes that Knatt had close assistance of well-qualified counsel throughout the proceedings. *See Carr*, 740 F.2d at 345.

E. *Carr* Factor Six—Knowing and Voluntary Plea

"To enter a knowing and voluntary guilty plea, a defendant must have full knowledge of what the plea connoted and of its consequences." *Lord*, 915 F.3d at 1016 (citing *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)); *see Strother*, 977 F.3d at 445. Indeed, a defendant must have notice of "the nature of the charges against [him], [he] must understand the consequences of [his] plea, and must understand the nature of the constitutional protections [he] is waiving." *Urias-Marrufo*, 744 F.3d at 366. "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *Lord*, 915 F.3d at 1016 (quoting *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995)). "For a guilty plea to be voluntary, it must 'not be the product of actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.'" *Urias-Marrufo*, 744 F.3d at 366.

In this situation, the court rejects Knatt's argument that being nineteen years old and having only a ninth grade education prevented him from knowingly and voluntarily entering the plea agreement. Knatt previously voiced similar complaints with regard to a plea agreement negotiated by prior counsel. He filed a *pro se* motion seeking new counsel on June 16, 2021 (#21), contending that his attorney "pressed the defendant to accept the plea agreement," that he "signed the plea agreement under duress," was "unclear of the offer," and had "no idea of the details the defendant agreed upon." His current arguments are merely a regurgitation of his prior complaints that led to his successful renunciation of an earlier plea agreement. Knatt should not be permitted

11

to claim ignorance once again and to avoid the consequences of his violent criminal conduct in which he needlessly inflicted a serious gunshot wound on the victim after he had already gained control of his vehicle.

Here, in contrast to his present contentions, Knatt repeatedly asserted throughout the plea colloquy that his plea was knowing and voluntary. Specifically, Knatt told the court the following: (1) he understood the charges against him; (2) his plea was voluntary; (3) his plea was not the result of force, threats, or promises by anyone; (4) he participated in discussions with his attorney and the Government regarding his plea; (5) he accepted the terms of the plea agreement; and (6) he was entering his plea knowingly, freely, voluntarily, and with the advice of counsel. He also admitted his guilt in his own words and acknowledged that his conduct was wrong. Knatt's statements in open court "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Strother*, 977 F.3d at 944; *United States v. Palacios*, 928 F.3d 450, 456 (5th Cir. 2019) ("[A] defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)); *Cothran*, 302 F.3d at 283-84.

Additionally, the court provided a litany of admonishments and explanations to Knatt throughout the hearing, including the elements of the charge, the consequences of his plea, the offense's maximum punishment, and his right to appeal. *See Palacios*, 928 F.3d 450, 456 (5th Cir. 2019) (finding that the "record plainly demonstrate[d] that the plea was both knowing and voluntary"); *United States v. McFarland*, 839 F.2d 1239, 1242 (7th Cir.), *cert. denied*, 486 U.S. 1014 (1988) ("To deter abuses in the withdrawal of guilty pleas . . . and to protect the integrity of the judicial process, we have held that rational conduct requires that voluntary responses made

by a defendant under oath [when entering a guilty plea] . . . be binding."); *United States v. Duran-Espinoza*, No. 5:10-CR-1294-3, 2010 WL 5014341, at *3 (S.D. Tex. Dec. 1, 2010) (finding that defendant's plea was knowing and voluntary based on his responses during the Rule 11 colloquy). During the proceeding, Knatt expressed no reluctance or doubts about pleading guilty, did not suggest that he wished to withdraw his plea, gave no indication that he had any reservations or questions about the plea agreement, and voiced no concerns about his attorney's representation. Therefore, the court finds that Knatt entered his plea of guilty knowingly and voluntarily, and this factor, too, weighs against withdrawal.

III.    Conclusion

In sum, an analysis of the *Carr* factors indicates that Knatt has not shown a fair and just reason to withdraw his guilty plea, and the court finds that withdrawal is unjustified under the circumstances. Under the totality of the circumstances, all of the *Carr* factors weigh against permitting the withdrawal of Knatt's guilty plea in this case. Accordingly, Knatt's Motion to Withdraw Pleas (#38) is DENIED.

SIGNED at Beaumont, Texas, this 24th day of May, 2022.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE